# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1258

_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Whitewater

*Defendant - Appellant*

_____

No. 17-1259

_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Whitewater

*Defendant - Appellant*

_____

Appeals from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 14, 2017
Filed: January 3, 2018

_____

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

In the early morning hours of May 2, 2016, a passenger in a Chrysler Pacifica fired multiple rounds at a Chevrolet Tahoe traveling from the Winnebago Indian Reservation to the Omaha Indian Reservation. A federal jury convicted Anthony Whitewater as the shooter. The sole issue on appeal is whether the district court[1] erred in allowing evidence at trial from the photo lineup used to identify Whitewater. Whitewater claims the photo lineup was impermissibly suggestive. We find it was not and affirm the district court.

## I.

Around 1:30 a.m. on the morning of the shooting, Jason Miller and Vincent Wolfe, members of the Omaha Nation Tribe, attended a party on the Winnebago Indian Reservation. Whitewater, a member of the Winnebago Tribe, was also at the party, but left after he got into a fight with another guest. Shortly thereafter, Miller and Wolfe also left the party in Miller's Chevrolet Tahoe. As Miller drove home around 3:30 a.m., a blue Chrysler Pacifica pulled alongside the Tahoe on the driver's side. A man was hanging out of the Pacifica's passenger window, shouting and holding a handgun. Miller recognized him as the man who was ejected from the party based on his neck tattoo and floppy hat depicting marijuana leaves. The passenger

_____

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

fired two shots into the air. As the Tahoe sped away, the Pacifica gave chase—its passenger firing several rounds into the back of the Tahoe.

An Omaha Nation law enforcement officer spotted the speeding vehicles and pulled over the Pacifica, after briefly losing visual contact. The Pacifica's driver was Marcus Blackhawk: Whitewater's older brother. There was no passenger, but Blackhawk admitted that his "bro" had been with him. Blackhawk's girlfriend, Santita Medina, later testified that Whitewater had come to her home earlier that morning around 3:00 a.m. to get Blackhawk. The two men then left in Medina's blue Chrysler Pacifica.

Over the next two days, FBI Special Agent Stephen Friend separately interviewed Miller and Wolfe, who both provided almost identical descriptions of the shooter: a Native American male with dark hair, squinty eyes, and a throat tattoo, who was wearing a black floppy hat with green marijuana leaves on it. An FBI employee pulled images from a database that matched Miller and Wolfe's description. In June 2016, Special Agent Friend met with Miller and Wolfe separately to conduct a six-photo lineup, in which both Miller and Wolfe identified Whitewater as the shooter.

Whitewater was charged with assault with a dangerous weapon in Indian Country under 18 U.S.C. §§ 113(a)(3) and 1153, use of a firearm during a crime of violence under 18 U.S.C. §§ 924(c)(1)(A)(iii) and 1153, and being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court denied Whitewater's motion in limine to exclude evidence of the photo lineup and in-court eyewitness identification, finding the lineup was not impermissibly suggestive. At trial, Miller and Wolfe testified that they identified Whitewater from a photo lineup, and both identified Whitewater in court. The jury found Whitewater guilty on all charges, and the court sentenced him to 240 months imprisonment.

Whitewater appeals his convictions, claiming the district court improperly allowed evidence from the photo lineup at trial.

## II.

The Due Process Clause protects against the admission of evidence derived from improper identification procedures. Neil v. Biggers, 409 U.S. 188, 196 (1972). We review the admissibility of identification evidence de novo. United States v. Donelson, 450 F.3d 768, 772 (8th Cir. 2006). To determine whether such evidence is admissible, "we [first] determine whether the defendant has shown that the identification procedures were impermissibly suggestive." Id. (internal quotation marks omitted). "If that showing is made, we examine the totality of the circumstances to determine whether the suggestive procedures created a very substantial likelihood of irreparable misidentification." Id. at 773 (internal quotation marks omitted). Because we find the photo lineup was not impermissibly suggestive, we do not reach the second inquiry.

"When there are no differences in appearance tending to isolate the accused's photograph," the lineup is not impermissibly suggestive. Schawitsch v. Burt, 491 F.3d 798, 802 (8th Cir. 2007). To create the photo lineup at issue here, the FBI pulled five images from an online database matching the description Miller and Wolfe provided. The district court concluded that the photo lineup was not impermissibly suggestive because "[t]he individuals are all males appearing to range from about 20 years of age to as much as 50 years of age. They all are dark-skinned, olive-skinned individuals with very short black hair. And they all have neck tattoos."

Whitewater challenges this conclusion by pointing out that he was the only confirmed Native American, the only confirmed resident of the Winnebago or Omaha Reservations, and the only party attendee included in the lineup. No doubt a photo

lineup "displaying persons of markedly different race or ethnicity may be unduly suggestive." United States v. Wilson, 787 F.2d 375, 385 (8th Cir. 1986). However, a photo lineup is not suggestive "solely because the display did not depict persons of the same race or ethnic group." Id. (upholding photo lineup where defendant was the only Hispanic man included). On appeal, Whitewater alleges only that the ethnicity of the other five men in the photo lineup was unknown. But even if Whitewater were in fact the only Native American, all of the men featured in the lineup shared similar physical characteristics such that Whitewater's ethnicity did not isolate him.[2] Furthermore, Whitewater cites no legal authority for his proposition that including only one local resident and party attendee made the lineup suggestive. We therefore agree with the district court that the photo lineup was not impermissibly suggestive.

Whitewater also challenges the reliability of the photo lineup identifications, but—when no improper law enforcement conduct is involved—due process does not require "a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." Perry v. New Hampshire, 565 U.S. 228, 245-47 (2012) (listing "safeguards built into our adversary system that caution juries against placing undue weight on eyewitness testimony of questionable reliability," including right to confront witnesses and government's burden to prove defendant guilty beyond reasonable doubt).

Because the identification procedures were not impermissibly suggestive, the district court properly allowed the evidence of the photo lineup to go to the jury.

---

[2] Although Whitewater contends that his Native American neck tattoo made him stand out, he cites no evidence in the record suggesting his neck tattoo was distinctively Native American while the other men's were not.

III.

For these reasons, we affirm.

_____